**Philip A. Seplow, Esq.**
**Attorney #004859**
**2000 North 7th Street**
**Phoenix, AZ  85006**
**E-Mail: screenwriter2@earthlink.net**
**Phone:(602) 254-8817**
**Fax    (602) 254-0271**

**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  ) | Case No. CR 11-163-PHX-NVW |
| Plaintiff,  ) | |
| vs.  ) | OBJECTION TO PRESENTENCE REPORT AND MEMORANDUM |
| Jeffery Harbin,  ) | |
| _____ ) | |

COMES NOW the Defendant, Jeffery Harbin, by and through undersigned counsel, and files the following objections to the presentence report and sentencing memorandum.

Defendant objects to the allegations in paragraph 5 found on page 3 of the presentence report.  Although Harbin admits to attempting to make aluminum powder, he was never successful in doing so and actually never came close to accomplishing that goal.  The CI is absolutely lying in that regard (perhaps trying to blow his own horn and make himself look more important to the FBI).  Further, Harbin only spent $60.00 on rocket engines and not $200.

In regard to paragraph 7 found on page 3 of the presentence report, the CI is again mistaken.  The bag which the CI is talking about only contained tools.  The grenade was in a tub.  When the Defendant was stopped and asked what was in the bag, he said, "Tools."  Ultimately, his tools have not been returned to him.

Concerning paragraph 8 of the presentence report found on page 4, on the 9th line, where the says, "One round metal object," in reality it was a plastic PVC pipe.

Concerning paragraph 16 found on page 5 of the presentence report, there were only 13 destructive devices as opposed to 15.

Concerning paragraph 17, the Defendant believes that adding 2 points "for a destructive device" is in and of itself a double punishment because the offense involved destructive devices and without the destructive devices he wouldn't be breaking the law.

Thus, Defendant believes the adjusted offense level (as shown in paragraph 21 on page 5) should be 22 as opposed to 24.

The Defendant believes that the total offense as found in paragraph 23 on page 5 of the presentence report should be 19 as opposed to 21.

Concerning paragraph 35 of the presentence report, it would probably be best if the Court were to recommend, for the safety of Mr. Harbin and the community in the future, that he be enrolled in the 500 hours substance abuse program that the Bureau of Prison offers.

Although the Defendant at one time was involved with an organization that had white supremecist believes, as noted in the justification paragraph on page 11 of the presentence report, the Court should note that within paragraph 13 found on page 4 of the presentence report, Harbin now rejects the white supremecist dogma and he has ended his associations and will continue to end his association with individuals who believe in the ideology of that

2

dogma and he does plan to have his white supremecist tattoos removed when release from the Bureau of Prisons.

As far as the threat of injury to others, the smaller destructive devices (and it is questionable whether those devices would work) were stored in a metal box away from the children of his girlfriend.

Further, since the recommendation of the presentence report writer is to monitor the Defendant for testing for use of illegal substances, that would also support the recommendation to the Bureau of Prisons that he be placed in the 500 hour substance abuse program offered by the Bureau of Prisons.

People make mistakes. Obviously, Mr. Harbin made a large error in judgment by getting involved with these potential destructive devices and although Americans are free to choose any association they want, in this particular case getting involved with white supremecist groups.

If the court reviews the letter from M. Ray Deese, TE, a utility engineer, licensed to practice in the states of Alabama and Mississippi, one can see that Mr. Deese has warm and wonderful feelings toward the Harbin family and he was shocked to learn about Jeffery's crime and he asks for the Court to grant mercy to Jeffery Harbin in the interests of justice.

Concerning the letter from Bern D. Stresemann, one of Jeffery's siblings, he explains how Jeffery was a very curious kid, creative, and always wanted to understand how things work. When undersigned counsel spoke with Jeffery, part of the reason he was involved with the building of these potential destructive devices was because the chemistry and engineering of these devices

1 fascinated him.  Probably the most important fact found in Bern
2 Stresemann's letter is that, "He had a very good and intense
3 social life with the kids in the neighborhood and his friends in
4 school.  In his class were also kids from Poland, Turkey and
5 Russia.  He was always friendly to everybody and got along with
6 them well.  Jeffery grew up in a multi-cultural society, and it
7 was the most normal thing for him."
8         Also, Bern Stresemann states in regard to his brother,
9 "and I have never seen any kind of aggressive reactions or
10 statements.  He is very open minded and caring for others.
11 Especially the way he cares for his girlfriend and her three
12 kids."
13         The letter from John R. Gilbert of Queen Creek, Arizona,
14 shows that Jeffery, in Mr. Gilbert's opinion, is "ABSOLUTELY no
15 threat to injure or hurt anyone – he never has been.  His only
16 character issue that must have led to this whole situation, is his
17 tendency to 'show off' to others on occasions, particularly if
18 deliberately prompted."  From reading the police reports, it seems
19 that the confidential informant in this particular was a person
20 who deliberately prompted Jeffery to act in the manner in which he
21 did.
22         Reviewing the letter from Judy Harbin Lindsay, Jeffery's
23 aunt, she states that, "Jeffery always seemed to be a quiet, shy,
24 a bit withdrawn young person who seemed to just fade into
25 background. . . . I truly believe Jeffery to be an honest and good
26 person at heart, who because of his lonely condition may have
27 sought attention from people who are not good for him and led him
28 in the wrong direction.  I do not hold him blameless but I do

believe he was strongly influenced by the wrong kind of attention." Again, undersigned counsel believes, after reading the reports, that the confidential informant is the reason that Jeffery acted in the manner in which he did.

Jeffery's father, Jerry, has served in the U.S. Army and in the United States Air Force. He is very close to his son and states that Jeffery has never been in any kind of trouble with the police or the courts prior to this unfortunate situation and he has truly been a good boy, kind and considerate of others. Although his father cautioned him from staying away from people like the CI and other members of the white supremecist groups, Jeffery's father believes that Jeffery let himself get unduly influenced by such "losers."

The letter from Rita L. Cheele demonstrates how polite and friendly Jeffery has always been. "He has always been honest even when it hurts. He is dependable, hard working, and has a creative imagination." She also indicates that Jeffery is influenced by others and "I cannot see him ever hurting anyone or doing things that might reflect negatively on himself or his family."

Reviewing the letter from Uwe Stresemann, it is apparent that Jeffery is very sensitive as he has never shown aggression or act[ed] hurtful to his fellow man (there is a German letter with an English translation for the Court in another package).

Thus, when the Court considers the sentencing mandates of 18 U.S.C. § 3553, a reasonable sentence, and one which would deter others from breaking the law, and would justly punish Jeffery Harbin, but punish him in a way that is sufficient but not

more than necessary to so do, would be a sentence of 24 months.

RESPECTFULLY SUBMITTED this 13th day of January, 2012.

PHILIP A. SEPLOW, ESQ.

By: s/Philip A. Seplow
Philip A. Seplow, Esq.
Attorney for Defendant

CERTIFICATE OF SERVICE

__X__  I hereby certify that on January 13, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Josh Parecki, Esq.
Assistant United States Attorney

__X__  I hereby certify that on January 13, 2012, I served the attached document via the SECRIS on the following, who are not registered participants of the CM/ECF System:

Jon Evanko
U.S. Probation Officer

S/ Philip A. Seplow